UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| X | |
| MOSHE MANESS, on behalf of himself and all others similarly situated, | Civ. Case No.: 1:19-cv-04330 |
| Plaintiffs, | |
| v. | |
| ZILLOW GROUP, INC., | **AMENDED** <br> **CLASS-ACTION COMPLAINT** |
| Defendant. | |
| X | |

## INTRODUCTION

1.    Plaintiff Moshe Maness brings this lawsuit on behalf of himself and all others similarly situated and asserts the following against the defendant Zillow Group, Inc. ("Defendant" or "Zillow").

2.    Plaintiff's claims arise under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* (the "NYCHRL") and the New York State Human Rights Law, N.Y. Executive Law §§ 290, *et seq.* (the "NYSHRL").

3.    Venue is proper in the Supreme Court of the State of New York, County of Kings, because Plaintiff is a resident of Kings County and Defendant conducts business in Kings County.

4.    The amount in controversy exceeds the jurisdictional limits of all lower courts of the State of New York.

5.    Plaintiff, at all relevant times, is and was a resident of Kings County and is over the age of 18.

6.    Defendant is a Washington State corporation authorized to do business and receive process in New York State.

7.      Plaintiff suffers from congenital fibrosis of the extraocular muscles, a rare condition that makes Plaintiff severely visually impaired.

8.      Plaintiff's condition severely limits his major life activity of sight.

9.      Plaintiff's condition is a disability under the NYSHRL and NYCHRL.

## NATURE OF THE CASE

10.     This putative class-action lawsuit looks to end the systemic and patterned housing and public-accommodation discrimination perpetrated by Defendant in violation of the City and State anti-discrimination laws.

11.     Defendant operates, *inter alia*, zillow.com (the "Website"). The Website is a platform available to the public that serves to facilitate, broker, or otherwise engage in real-estate transactions throughout the nation.

12.     On its Website, Defendant provides consumers with access to various real estate listings, including listings for real estate rentals and sales.

13.     Defendant's Website provides a means to connect consumers with independent brokers or property owners to facilitate real estate transactions.

14.     Through its Website, Defendant has engaged in a pattern a practice of denying, withholding, or otherwise limiting access to real-estate listings available on the Website for those who are blind and visually impaired.

15.     Defendant's Website has the effect of discriminating against Plaintiff and the putative class in both provision of public accommodations and provision of housing accommodations.

16.     Indeed, Defendant's Website contains numerous access barriers that effectively deny blind and visually impaired persons full and equal access to Defendant's goods and services.

## STATEMENT OF FACTS

17. Defendant is an online marketplace that offers real estate related services through its Website.

18. According to the Website, "Zillow is the leading real estate and rental marketplace dedicated to empowering consumers with data, inspiration and knowledge around the place they call home, and connecting them with the best local professionals who can help." *See* Zillow, *About Us—What is Zillow?*, https://www.zillow.com/corp/About.htm (last visited June 18, 2019).

19. The Website further states: "Zillow serves the full lifecycle of owning and living in a home: buying, selling, renting, financing, remodeling and more. It starts with Zillow's living database of more than 110 million U.S. homes - including homes for sale, homes for rent and homes not currently on the market, as well as Zestimate home values, Rent Zestimates and other home-related information." *Id.*

20. Upon information and belief, Zillow operates the most popular suite of mobile real estate apps, with more than two dozen apps across all major platforms.

21. Consumers use Zillow in connection with various real estate related transactions, including, *inter alia*, searching for homes and apartments for residential sale and rent.

22. While Zillow purports to be "dedicated to empowering consumers", it is not so dedicated to *all* consumers on full and equal basis without regard for disability. Indeed, Defendant's Website is not fully and equally accessible to blind and visually impaired individuals like Plaintiff and the putative class.

23. The internet is a critical source of information that provides a primary means for, *inter alia*, conducting business and engaging in real estate transactions, the absence of which

severely limits everyday activities such as shopping, learning, banking, researching, as well as many other activities for all people, including the sighted, blind, and visually impaired.

24.    Blind and visually impaired persons can access websites using keyboards in conjunction with screen-access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the internet.

25.    If not designed to be read by screen-reading software, websites create an incredible access barrier to blind and visually impaired persons to the extent that such persons are unable to fully access websites and thus the information and services contained thereon.

26.    There is a variety of screen-reading software programs available to blind and visually impaired users of Windows computers and devices.

27.    Screen-reading software only works, however, if the information on a website is made capable of being rendered into text. If website content is not made capable of being rendered into text, a blind or visually impaired user cannot access the same content available to sighted users.

28.    The International website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines (WCAG 2.0). WCAG 2.0 are well- established guidelines for making websites accessible to blind and visually impaired individuals. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility.

29.    There are well-established guidelines for making websites accessible to blind persons. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative (WAI), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility.

30.    The federal government's website accessibility standards under Section 508 of the Rehabilitation are readily available via the Internet, so that a business designing a website can easily access them as guidance for complying with state and local law. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding invisible alt-text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate the site. Without these very basic components a website will be inaccessible to a blind person using a screen reader.

31.    Noncompliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following: a text equivalent for every non-text element is not provided; title frames with text are not provided for identification and navigation; equivalent text is not provided when using scripts; forms with the same information and functionality as for sighted persons are not provided; information about the meaning and structure of content is not conveyed by more than the visual presentation of content; text cannot be resized without assistive technology up to 200% without losing content or functionality; if the content enforces a time limit, the user is not able to extend, adjust or disable it; web pages do not have titles that describe the topic or purpose; the purpose of each link cannot be determined from the link text alone or from the link text and its

programmatically determined link context; one or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible; the default human language of each web page cannot be programmatically determined; when a component receives focus, it may initiate a change in context; changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component; labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot; in content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique; inaccessible Portable Document Format (PDF) files; the name and role of all user interface elements cannot be programmatically determined; and items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology.

32.    Defendant's Website fails to comply with well-accepted accessibility standards.

33.    Defendant's Website is offered to the public and offers features that should allow all individuals to access the goods and services that the Defendant offers.

34.    Defendant's website provides goods and services to consumers and offers access to real estate related transactions.

35.    Upon information and belief, Defendant maintains a policy and practice of denying Plaintiff, along with other visually impaired and blind users, access to Defendant's website. This policy and practice is systemic and patterned, and it serves to deny access to the goods and services that Defendant offers in connection with real estate.

36.     Defendant's failure and refusal to remove access barriers to its website has caused Plaintiff and other visually impaired persons to have been and still be denied equal access to the information made available to sighted persons on Defendant's website.

37.     During a visit to the website, the last occurring in June 2019, several access barriers were identified that effectively denied Plaintiff full and equal access to the goods and services offered to the public and made available to the public by Defendant.

38.     These multiple accessibility barriers include, but are not limited to:

a)  Lack of alternative text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical images on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, the Defendant's visually impaired customers are unable to determine what is on the website, browse, look for real estate, obtain information about real estate, including the appearance and condition of listed properties;

b)  Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users;

c)  Redundant links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

d)  Linked images missing alt-text, which causes problems if an image within a link

contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

39.     Due to the inaccessibility of the Defendant's website, blind and visually impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services that Defendant offers to the sighted public on its website.

40.     There exists a plethora of other access barriers present on the Website.

41.     For most listings on the Website, the most descriptive, informative, and meaningful aspects of such listings are the images of the specific property being advertised. Without these images, consumers generally cannot identify critical information and details about the listed properties.

42.     Nonetheless, these images are invariably inaccessible to the blind and visually impaired because they do not contain alt-text.

43.      Because of Defendant's failure to provide alt-text describing the images, blind and visually impaired individuals are left without means to fully understand the nature of the advertisements, the condition and appearance of the property listed, and what specifically is being offered or advertised.

44.     Moreover, the overall layout and design of the Website is itself an access barrier. Indeed, the Website lists properties on a map that lacks any alt-text describing the precise location of a given listed property, including cross streets and precise locations of public transportation and local amenities.

45.     The Website likewise utilizes links that do not contain alt-text and are thus inaccessible.

46.    Defendant's Website prevents visually impaired users from knowing what content on the website is available to navigate. Because there are no labels associated with the input fields, a screen-reader user will not get the proper context if placeholder text fails, is changed, or is not supported by a browser. This wholly prevents a screen reader user from properly using the search functions on the Websites to aid them in their home search.

47.    Defendant's Website contains material that is accessible to those with vision and is not accessible to the visually impaired. In particular, Defendant offers a "Home Buyers Guide." The play button for this service is a link with no text and is thus read only as "link" by screen readers, making it very difficult for a visually disabled person to have any idea where it leads.

48.    Defendant, by making its Website inaccessible to the blind and visually impaired, is denying Plaintiff and the class equal and full access to its listings as it does for sighted people.

49.    The listings on Defendant's website fail to provide adequate descriptions of the real estate other than the images posted thereon.

50.    Defendant's Website creates a substantial access barrier for blind and visually impaired individuals who wish to engage in real estate related transactions through Defendant's Website, and these access barriers on the Defendant's Website effectively deter blind and visually impaired persons from engaging in real estate transactions in a manner equal to sighted individuals.

51.    Because basic compliance with WCAG 2.0 would provide Plaintiff and other visually impaired persons with equal access to the website, Plaintiff alleges that Defendant engaged in acts of intentional discriminated against him and the putative class, including, but not limited to, the following policies or practices: constructing and maintaining a website that is inaccessible to visually impaired persons; failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired persons; failing to take

actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired persons, such as the Plaintiff, as a member of a protected class; intentionally discriminating in connection with provision of housing accommodations; circulating or causing to be circulated discriminatory housing-related advertisements and listings; disparately impacting blind and visually impaired individuals in connection with obtaining housing accommodations.

52.    Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination against others, as alleged herein.

53.    If the Defendant's website was accessible, Plaintiff and similarly situated visually impaired persons could independently access information about the real estate listings contained on the Website and related goods and services.

54.    Although Defendant may currently have centralized policies regarding maintaining and operating the Defendant's website, Defendant lacks a plan and policy reasonably calculated to make the Defendant's Website fully and equally accessible to, and independently usable by, blind and other visually impaired persons.

55.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining the Website and Defendant has generated significant revenue from its Website. These amounts are far greater than the associated cost of making Defendant's website equally accessible to visually impaired customers.

56.    Defendant has previously received notice that it was not in compliance with well-settled accessibility guidelines.

57.    Upon information and belief, Defendant has not taken steps necessary to fully comply with well-settled accessibility guidelines and, absent judicial intervention, will likely continue to fail to take steps necessary to fully comply with such guidelines.

## CLASS-ACTION ALLEGATIONS

58.     This case is brought as and may be maintained as a class action under Article 9 of the CPLR.

59.     Plaintiff, on behalf of himself and all others similarly situated, seeks to certify two putative classes defined as follows:

    a)  The NYS Class: All visually impaired individuals who reside in the State of New York who have attempted to avail themselves of the goods and services of Defendant's Website and have been denied full and equal access to such goods and services offered through Defendant's Website during the relevant statutory period;

    b)  The NYC Class All visually impaired individuals who reside in the City of New York who have attempted to avail themselves of the goods and services of Defendant's Website and have been denied full and equal access to such goods and services offered through Defendant's Website during the relevant statutory period.

60.     Common questions of law and fact exist as to the Classes, including, but not limited to:

    a)  Whether the Website is a "public accommodation" under the NYCHRL and the NYSHRL;

    b)  Whether Defendant through the Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the foregoing laws;

**Page 11 of 24**

c) Whether Defendant discriminated against people with visual disabilities in connection with real estate-related transactions under the NYSHRL and NYCHRL.

61.     Plaintiff's claims are typical of the class which, like Plaintiff: 1) are visually disabled persons; 2) have claims against Defendant for violations under the NYCHRL and the NYSHRL; and 3) are residents of the State of New York.

62.     Plaintiff is committed to the vigorous prosecution of this action and will fairly and adequately represent and protect the interests of the class because Plaintiff has retained and is represented by competent counsel.

63.     Plaintiff is an adequate representative of the Class and, together with their attorneys, are able to, and will fairly and adequately, protect the interests of the Class and its members.

64.     Class certification of the claims is appropriate under Article 9 because the Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

65.     Plaintiffs have no interests antagonistic to the interests of the other members of the Class. There is no conflict between Plaintiffs and any other members of the Class with respect to this action or the claims for relief herein.

66.     In addition, a class action is superior to other available methods for the fair, just, and efficient adjudication of the claims asserted herein. Joinder of all members of the Class is impracticable and, for financial and other reasons, it would be impractical for individual members of the Class to pursue separate claims. Moreover, prosecution of separate actions by individual

members of the Class would create the risk of varying and inconsistent adjudications and would unduly burden the courts.

67.    Class certification is also appropriate because fact and legal questions common to the class predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

68.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the state of New York.

## PUBLIC-ACCOMMODATION CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE N.Y.C. ADMIN. CODE §§ 8-101 *ET SEQ.*

69.    Plaintiff, on behalf of himself and the NYC Class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

70.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

71.    Defendant's Website is a sales establishment and public accommodation within the definition of N.Y.C. Admin. Code § 8-102(9), and its Website is a service provided to the public.

72.    Defendant is subject to NYCHRL because it owns and operates the Website, the Website is available in the City of New York, and the Website concerns real property located in New York City, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

73.    Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to

update or remove access barriers to the Website, causing its Website and the services integrated therewith to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

74.  Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

75.  Defendant's actions constitute willful intentional discrimination against the NYC Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

    a)  constructed and maintained a website that is inaccessible to visually impaired and blind class members with knowledge of the discrimination; and/or

    b)  constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to visually impaired and blind class members; and/or

    c)  failed to take actions to correct these access barriers in the face of substantial harm and discrimination to visually impaired and blind class members.

76.  Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

77.  As such, Defendant discriminates, and will continue in the future to discriminate, against Plaintiff and members of the proposed class and subclass on the basis of disability in the

full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website and its establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

78.    Defendant's actions were and are in violation of the NYCHRL and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

79.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

80.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

81.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
### <u>VIOLATION OF N.Y. EXEC. L. §§ 290,</u> *ET SEQ.*

82.    Plaintiff, on behalf of himself and the NYS Class and the NYC Class, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83.    N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

84.    Defendant's website is a public accommodation within the definition of N.Y. Exec.

Law § 292(9). Defendant's Website is also a service, privilege, or advantage of Defendant. Defendant's Website is a service that is by and integrated with real property in New York.

85.    Defendant is subject to New York State Human Rights Law because it owns and operates its Website and does business in this State, and conducts transactions relating to real estate in New York. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

86.    Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website and the services integrated therewith to be completely inaccessible to visually impaired and blind persons. This inaccessibility denies blind patrons full and equal access to the facilities, services that Defendant makes available to the non-disabled public.

87.    Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

88.    Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

89.    Readily available, well-established guidelines exist on the Internet for making

websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

90.     Defendant's actions constitute willful intentional discrimination against the NYS and NYC Classes on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that Defendant has:

a)  constructed and maintained a website that is inaccessible to visually impaired and blind persons class members with knowledge of the discrimination; and/or

b)  constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to visually impaired and blind class members; and/or

c)  failed to take actions to correct these access barriers in the face of substantial harm and discrimination to visually impaired and blind class members.

91.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

92.     Defendant discriminates and will continue in the future to discriminate against Plaintiff and NYS and NYC Class Members on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of Defendant's Website under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and the Class Members will continue to suffer irreparable harm.

93.     Defendant's actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

94.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

95.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

96.     Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FAIR-HOUSING CAUSES OF ACTION

### THIRD CAUSE OF ACTION
### VIOLATION OF N.Y.C. ADMIN. CODE §§ 8-101, *ET SEQ.*

97.     Plaintiff, on behalf of himself and the NYC Class, repeats and realleges each and every preceding paragraph as if fully set forth again herein.

98.     The NYCHRL provides, in relevant part:

It shall be an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation . . . or any agent or employee thereof:
(1)   Because of the actual or perceived . . . disability . . . of any person or group of persons . . . :
(a)   To refuse to sell, rent, lease, approve the sale, rental or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation or an interest therein; [or]
(b) To discriminate against any such person or persons in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith . . . .

N.Y.C. Admin. Code § 8-107(5)(a)(1)(a)-(b).

99. The law further makes it unlawful:

To declare, print or circulate or cause to be declared, printed or circulated any statement, advertisement or publication, or to use any form of application for the purchase, rental or lease of such a housing accommodation or an interest therein or to make any record or inquiry in conjunction with the prospective purchase, rental

or lease of such a housing accommodation or an interest therein which expresses, directly or indirectly, any limitation, specification or discrimination as to . . . disability . . . or any intent to make such limitation, specification or discrimination.

*Id.* § 8-107(5)(a)(2).

100.    Identical provisions to the ones set forth in two immediately preceding paragraphs apply to "Real estate brokers" under the NYCHRL. *See Id.* § 8-107(5)(c)(1); *id.* § 8-107(5)(c)(2).

101.    Moreover, the NYCHRL applies to "Real estate services":

It shall be an unlawful discriminatory practice, because of the actual or perceived race, creed, color, national origin, gender, disability, sexual orientation, uniformed service, age, marital status, partnership status, or alienage or citizenship status of any person or because children are, may be or would be residing with such person: (1)   To deny such person access to, membership in or participation in a multiple listing service, real estate brokers' organization, or other service . . . .

*Id.* § 8-107(5)(e)(1).

102.    Additionally, the NYCHRL applies to "Real estate related transactions":

It shall be an unlawful discriminatory practice for any person whose business includes the appraisal of housing accommodations, land or commercial space or interest therein or an employee or agent thereof to discriminate in making available or in the terms or conditions of such appraisal on the basis of the actual or perceived race, creed, color, national origin, gender, disability, sexual orientation, uniformed service, age, marital status, partnership status, or alienage or citizenship status of any person or because children are, may be or would be residing with such person.

*Id*. § 8-107(5)(f).

103.    Defendant is the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation, or any agent or employee thereof.

104.    Defendant is likewise a provider of real-estate services and engages in real estate related transactions.

105.    Defendant provides real-estate services in the form of multiple listing services or other services.

106.     Defendant engages in real-estate appraisal services through its Website.

107.     Defendant, through its Website, unlawfully discriminates against Plaintiff and the putative class by refusing to sell, rent, lease, approve the sale, rental, or lease, or otherwise denies or withholds from Plaintiff and the putative class housing accommodations on the basis of disability.

108.     Defendant, through its Website, has circulated or caused to be circulated advertisements and publications for the rental of housing accommodations in a manner that is inaccessible to Plaintiff and the putative class.

109.     Defendant's Website expresses limitations as to Plaintiff and the putative class's disability and, by failing to make its Website and all aspects thereof accessible, has indicated an intent to make such limitations.

110.     Defendant, through its Website, has denied Plaintiff and the putative class full and equal access to, membership in, or participation in a multiple listing service or other service.

111.     Defendant's actions are in violation of the NYCHRL.

112.     Plaintiff is entitled to compensatory damages and civil penalties and fines for each and every offense.

113.     Plaintiff is entitled to reasonable attorneys' fees and costs.

114.     Under NYCHRL and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FOURTH CAUSE OF ACTION
### VIOLATION OF N.Y. EXEC. L. §§ 290, *ET SEQ.*

115.     Plaintiff, on behalf of himself and the NYS Class and the NYC Class, repeats and realleges each and every preceding paragraph as if fully set forth again herein.

116.    The NYSHRL makes it an unlawful discriminatory practice for the "owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation . . . or any agent or employee thereof . . . [t]o refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of . . . disability . . . ." N.Y. Exec. L. § 296(5)(a)(1).

117.    The NYSHRL further makes it unlawful "[t]o print or circulate or cause to be printed or circulated any statement, advertisement or publication, or to use any form of application for the purchase, rental or lease of such housing accommodation . . . which expresses, directly or indirectly, any limitation, specification or discrimination as to . . . disability . . . or any intent to make any such limitation, specification or discrimination." *Id.* § 296(5)(a)(3).

118.    Defendant is an agent of the owner, lessee, sub-lessee, assignee, or managing agent of, or is another person having the right to sell, rent, or lease a housing accommodation.

119.    Defendant, through its Website, is discriminating against Plaintiff and NYS and NYC Classes to the extent, *inter alia*, that the Website has the effect of denying Plaintiff and the putative class the opportunity to engage in real estate transactions.

120.    Defendant, through its Website, refuses to sell, rent, lease or otherwise denies or withholds from Plaintiff and the putative classes housing accommodations on the basis of disability.

121.    Defendant, through its Website, has circulated or caused to be circulated real-estate advertisements that fail to be accessible to Plaintiff and the putative classes, thereby indicating limitations, specifications, preferences, or discrimination on the basis of disability.

122.    Defendant's unlawful discriminatory practices will continue indefinitely without this Court's intervention.

123.    Defendant's actions are in violation of the NYSHRL.

124.    Plaintiff is entitled to compensatory damages and civil penalties and fines for each and every offense.

125.    Plaintiff is entitled to reasonable attorneys' fees and costs.

126.    Under NYSHRL and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## SEVENTH CAUSE OF ACTION
### DECLARATORY RELIEF

127.    Plaintiff, on behalf of himself and NYS and NYC Classes, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

128.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the goods and services and facilities of its Website and by extension its physical locations, which Defendant owns, operations and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

129.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to housing accommodations and fails to comply with applicable laws including, but not limited to, the FHA, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination in the provision of housing accommodations.

130.    A judicial declaration is necessary and appropriate at this time in order that each of

the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

(a)    A preliminary and permanent injunction to prohibit Defendant from violating the N.Y. Exec. Law § 296, *et seq.,* and the N.Y.C. Administrative Code § 8-107, *et seq.*;

(b)    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in the NYCHRL and NYSHRL, and their respective implementing regulations, so that the Website is readily accessible to and usable by blind and visually impaired individuals;

(c)    A declaration that Defendant owns, maintains, or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by N.Y. Exec. Law § 296, *et seq*., and the N.Y.C. Administrative Code § 8-107, *et seq.*;

(d)    An order certifying the Classes under Article 9 of the CPLR, appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

(e)    Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed Classes for violations of their civil rights under the NYSHRL and NYCHRL;

(f)    Pre- and post-judgment interest;

(g)    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

(h)    Such other and further relief as this Court deems just and proper.

**Page 23 of 24**

## DEMAND FOR TRIAL-BY-JURY

Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated:    Brooklyn, New York
          August 5, 2019

Joseph Y. Balisok, Esq.

*Joseph Y. Balisok*

**BALISOK & KAUFMAN, PLLC**
251 Troy Avenue
Brooklyn, NY 11213
Telephone: (718) 928-9607
Facsimile: (718) 534-9747
*Attorneys for Plaintiff*